IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 SEP 30 AM 10: 42

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| ROBERT E. BANKS, | X | |
| | X | |
| Plaintiff, | X | |
| | X | |
| vs. | X | No. 03-2980-M1/P |
| | X | |
| UNITED PARCEL SERVICES, INC., | X | |
| et al., | X | |
| | X | |
| Defendants. | X | |
| | X | |

ORDER GRANTING DEFENDANT UPS'S MOTION FOR SUMMARY JUDGMENT
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

Plaintiff Robert E. Banks, through counsel, filed a
complaint on December 29, 2003 against United Parcel Services, Inc.
("UPS") and Suzanne Redmond. The complaint asserted claims pursuant
to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et
seq., 42 U.S.C. § 1981, and state law. Defendant UPS answered the
complaint on February 27, 2004.[1] On January 18, 2005, defendant UPS
filed a motion for summary judgment, supported by a statement of
undisputed facts, a memorandum of law, and excerpts from the
plaintiff's deposition. Plaintiff filed a response in opposition to
the summary judgment motion on February 8, 2005, accompanied by his

---

[1] For reasons that are not clear, the docket sheet indicates that
summonses were not issued to plaintiff's counsel upon filing of the complaint.
Nonetheless, plaintiff's answer raises no issue concerning insufficient service.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 10-3-05

own factual affidavit and the affidavits of Lisa Jefferson, Courtney Wade, and Harvey Jones.

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (same).[2]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>id.</u> at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); <u>Matsushita</u>, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. <u>Liberty Lobby</u>, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require

---

[2]     Rule 56(e) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Moreover, Fed. R. Civ. P. 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000); see also Good v. Ohio Edison Co., 149 F.3d 413, 422 (6th Cir. 1998); Plott v. General Motors Corp., 71 F.3d 1190, 1196-97 (6th Cir. 1995). Moreover, the Sixth Circuit has held that, unless the nonmoving party files a Rule 56(f) affidavit, a district court cannot decline to consider the merits of a summary judgment motion on the ground that it is premature. Wallin v. Norman, 317 F.3d 558, 564 (6th Cir. 2003).

For purposes of this motion, the following facts are undisputed:

1. UPS employed Banks at all pertinent times in the job position of Auto-Diesel Mechanic, which includes responsibility for repairing and maintaining an assigned fleet of UPS "feeder" trucks. (Deposition of Robert E. Banks, taken Sept. 30, 2004 ("Banks Dep.") at 26, 35.) In September 2003, one of the trucks in Banks's fleet was Unit No. 263233, a truck driven by Redmond, a feeder driver and, like Banks, a member of the Teamsters union. (Id. at 39, 41.) Banks had been responsible for over

4

three years for the fleet that included No. 263233. (Id. at 39, 211.)

2.    Banks is a black male, approximately five feet seven inches tall, and weighs 169 pounds. (Id. at 169, 207.) Redmond is a white female, approximately five feet five inches tall, and is significantly lighter than Banks. (Id. at 79, 206-07.) Banks and Redmond have different job positions, different supervisors, work in different departments, and work out of different business centers. (Id. at 215-16.)

3.    On September 15, 2003, Banks alleges that Redmond became upset with him, yelled at him, and told him that he was a "shitty" mechanic. (Id. at 168; Compl., Ex. 1.) Redmond then allegedly hit Banks with her upper body. (Banks Dep. at 168-69; see also Compl., Ex. 1.) She did not use her fists, elbows, knees, or any weapon. (Banks Dep. at 207-08.) Banks admits that he was not hit hard or physically injured and that the contact only "knocked [him] off balance a little." (Id. at 169, 246-47.)[3]

4.    Banks claims that UPS treated him differently because of his race and sex because Redmond was not disciplined for making intentional physical contact with the plaintiff. (Banks Dep. at 170, 179, 200, 280-81.) Although admitting he suffered no discipline, Banks believes he would have been disciplined if he had made intentional physical contact with Redmond. (Id. at 170-71, 199-200, 280-81.)

5.    Banks has not pursued any criminal charges against Redmond, has not filed for workers' compensation benefits related to the physical contact with Redmond, and did not file a union grievance relating to the alleged assault or his belief that Redmond should have been disciplined. (Id. at 296-97, 306.)

6.    On September 30, 2003, Banks missed three days of work serving part of a jail sentence. (Id. at 79-83, 87, 89.) Because he had no paid or unpaid leave remaining, he received a report-to-work notice indicating that, if he did not report to work within forty-eight (48) hours, he would be considered terminated. (Id. at 50-54.) Banks was released from jail and returned to work before the forty-eight hours expired and was, therefore,

---

[3]    Although UPS also asserts that "Redmond denies touching Banks inappropriately," UPS has not cited any admissible evidence in support of that proposition. Redmond's answer is not admissible evidence.

not terminated. (Id. at 52-53, 74.)[4] He claims, nevertheless, that his return to work notice was in retaliation for complaining to UPS that Redmond should have been disciplined for the September 15, 2003 incident.

7.   In early October 2003, Banks claims he told UPS management he believed Redmond's race was the reason she had not been disciplined. (Id. at 281-83.) Banks later complained that he should no longer have Redmond's truck in his fleet. (Id. at 210.)[5]

Plaintiff's race discrimination claim arises under Title VII and 42 U.S.C. § 1981. His sex discrimination claim arises under Title VII. In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court set forth a methodology for evaluating evidence in discrimination cases where, as here, the plaintiff has no direct evidence of discrimination.[6] That process has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons

---

[4]   UPS notes in a footnote that Banks was released from jail after appealing his conviction for patronizing a prostitute. The conviction was subsequently affirmed on appeal. State v. Banks, No. W2003-02353-CCA-R3-CD, 2004 WL 2439320 (Tenn. Crim. App. Nov. 1, 2004), perm. app. denied (Tenn. Feb. 28, 2005). Banks began serving the remainder of his sentence on November 29, 2004. When he failed to report for work for several days without notice in November and December 2004, his job was deemed abandoned pursuant to the collective bargaining agreement. These subsequent events are not at issue in this lawsuit.

[5]   The Court has omitted the proposed factual stipulations submitted by UPS with which the plaintiff has taken issue. Those matters will be addressed infra.

[6]   This analysis is applicable to race discrimination claims arising under 42 U.S.C. § 1981, as well as to Title VII claims. Wade v. Knoxville Utils. Bd., 259 F.3d 452, 464 (6th Cir. 2001).

offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. at 253.

UPS contends that the plaintiff cannot establish a prima facie case of discrimination on the basis of his race or gender. This requires the plaintiff to show that: "(1) he is a member of the protected class . . . ; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently from similarly situated employees outside the protected class." Mitchell v. Vanderbilt Univ., 389 F.3d 177, 181 (6th Cir. 2004); see also Singfield v. Akron Metropolitan Housing Auth., 389 F.3d 555, 561 (6th Cir. 2004); Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002). In this case, it is undisputed that plaintiff is a black male. Moreover, for purposes of this motion, defendant does not dispute that plaintiff was qualified for his position.

UPS first argues that plaintiff has not been subjected to an adverse employment action. An adverse employment action is "a materially adverse change in the terms of [his] employment." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996).

[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished

7

material responsibilities, or other indices that might be
unique to a particular situation.

<u>Crady v. Liberty Nat'l Bank & Trust Co.</u>, 993 F.2d 132, 136 (7th Cir.
1993).[7] <u>De</u> <u>minimis</u> changes in an employee's working conditions are
not actionable. <u>Ford v. General Motors Corp.</u>, 305 F.3d 545, 553
(6th Cir. 2002); <u>Bowman v. Shawnee State Univ.</u>, 220 F.3d 456, 461-62
(6th Cir. 2000); <u>Kocsis</u>, 97 F.3d at 886-87; <u>Yates v. Avco Corp.</u>, 819
F.2d 630, 638 (6th Cir. 1987); <u>accord</u> <u>Greaser v. Missouri Dep't of
Corrections</u>, 145 F.3d 979, 984 (6th Cir. 1998). "A 'bruised ego' is
simply not enough to constitute an adverse employment action."
<u>Mitchell</u>, 389 F.3d at 182.

Application of these principles is complicated in this
case by the plaintiff's failure clearly to articulate a distinct act
of discrimination against him. Plaintiff was not disciplined because
of the incident with Redmond, Banks Dep. at 113, and he experienced
no change in his rate of pay or his job responsibilities, <u>id.</u> at
105-06; <u>see also</u> <u>id.</u> at 290. To be sure, plaintiff was required to
continue servicing the truck that was assigned to Redmond, just as
he did prior to the September 15, 2003 incident. However, as
previously mentioned, the personal discomfort felt by plaintiff in
having continued contact with Redmond does not constitute an adverse
employment action. <u>Mitchell</u>, 389 F.3d at 182; <u>see also</u> <u>id.</u> at 182
("a plaintiff's subjective impression concerning the desirability
of one position over another generally does not control with respect

---

[7]      The <u>Crady</u> formulation has been adopted by the Sixth Circuit. <u>See,
e.g.</u>, <u>Hollins v. Atlantic Co.</u>, 188 F.3d 652, 662 (6th Cir. 1999); <u>Kocsis</u>, 97 F.3d
at 886.

to the existence of an adverse employment action"); <u>Sherman v. Chrysler Corp.</u>, 47 Fed. Appx. 716, 721-22 (6th Cir. Sept. 16, 2002) (denial of request for a lateral transfer not an adverse employment action); <u>Kocsis</u>, 97 F.3d at 885-87 (lateral transfer not an adverse employment action).[8] Moreover, the letter threatening plaintiff with termination if he did not report to work within forty-eight hours did not constitute a materially adverse employment action because the threat was never carried out.[9] <u>Mitchell</u>, 389 F.3d at 182 ("Mere threats of alleged adverse employment action are generally not sufficient to satisfy the adverse action requirement."). Accordingly, plaintiff has not established that he suffered an adverse employment action.

UPS also argues that plaintiff cannot establish that he was treated differently from similarly situated employees outside the protected class. In order to satisfy this element, the plaintiff and the nonprotected coworkers must be similar in all relevant respects. <u>Singfield</u>, 389 F.3d at 562 (collecting cases); <u>see also Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 583 (6th Cir. 1992) ("Thus, to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or

---

[8]    To the extent that plaintiff is contending that his interactions with Redmond constituted a hostile work environment, that issue will be addressed <u>infra</u>.

[9]    Plaintiff's contention that the September 30, 2003 letter was sent in retaliation for his complaints about Redmond are addressed <u>infra</u>.

mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."). Application of this principle is complicated because the plaintiff apparently does not contend that, if his race or gender were different, UPS would have reassigned Redmond's truck from his fleet and would not have sent him a return to work letter. Instead, plaintiff attempts to satisfy this element by asserting that, if he had engaged in the same conduct as Redmond, he would have been terminated. Banks Dep. at 170-71, 179, 199-201, 279-83. However, apart from the fact that plaintiff's position is entirely hypothetical, plaintiff and Redmond are not similarly situated in that they are employed in different positions, they have different supervisors, and they work out of different locations. Banks Dep. at 215-16.[10] Accordingly, plaintiff has not satisfied the fourth element of a prima facie case of race or gender discrimination.

Plaintiff also contends that UPS unlawfully retaliated against him, in violation of Title VII, by refusing to remove

---

[10]     Plaintiff also seems to contend that Redmond received more favorable treatment that other employees who have engaged in similar misconduct. Thus, he submitted the affidavit of Courtney Wade, who is presumably a black male and who states that he was terminated from his position as a route driver on February 17, 2004 after an altercation with a white male employee. Wade's affidavit states that "[t]here were a number of witnesses who stated the White male was the aggressor in this matter, but he was not disciplined nor did he lose any wages." Affidavit of Courtney Wade, sworn to on Jan. 21, 2005, ¶ 7. Plaintiff also submitted the affidavit of Lisa Jefferson, who is presumably a black female and who stated that she was discharged in June 2004 "after being accused of starting an altercation with a black male co-worker, which was totally false." Affidavit of Lisa Jefferson, sworn to on Feb. 3, 2005, ¶ 5. Jefferson was eventually reinstated, and the other worker was removed from her work area and, eventually, terminated. Id., ¶¶ 7-8. As UPS has pointed out, this evidence is, largely, irrelevant. The issue in this case is whether UPS discriminated against plaintiff on the basis of his race or sex, not whether UPS discriminated against Wade or Jefferson. Moreover, plaintiff has made no showing that Wade and Jefferson were similarly situated to Redmond in all relevant respects.

Redmond's truck from the fleet to which he was assigned and by issuance of the September 30, 2003 warning letter. In response, UPS argues that plaintiff cannot establish a prima facie case of retaliation. The Sixth Circuit has applied the McDonnell Douglas framework for analyzing claims of retaliation. Ford v. General Motors Corp., 305 F.3d 545, 552-53 (6th Cir. 2002).

> To make a prima facie case of Title VII retaliation, a plaintiff must prove: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.

Id.

Generally, the first element of a retaliation claim requires that the plaintiff have either (i) made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII or (ii) opposed a violation of Title VII. Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989); Comiskey v. Automotive Industry Action Group, 40 F. Supp. 2d 877, 897 (E.D. Mich. 1999). In this case, the plaintiff does not contend that he took any steps to exhaust his Title VII claim concerning the September 15, 2003 incident prior to the issuance of the September 30, 2003 warning letter.[11] Moreover, because Redmond's truck was assigned to the plaintiff before and after his EEOC charge, he does not contend that the filing of the

---

[11]   The plaintiff's EEOC charge, which is attached to his complaint, is dated October 8, 2003. The record does not disclose when plaintiff first visited the EEOC or when UPS first learned that plaintiff had filed, or was planning to file, a Title VII charge.

EEOC charge motivated UPS's refusal to reassign the truck. Accordingly, this case concerns only "opposition" activity. <u>Booker</u>, 879 F.2d at 1313 ("any activity by an employee prior to the instigation of statutory proceedings is to be considered pursuant to the opposition clause").

UPS contends that plaintiff's complaints to management about the failure to discipline Redmond do not constitute protected activity. In so holding, UPS relies on the following language in <u>Booker</u>, 879 F.2d at 1313:

> [A] vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination. In our view, such would be an intolerable intrusion into the workplace.

Application of this principle to the instant case is complicated by the fact that the record before the Court does not reflect the precise nature of the plaintiff's complaint. If, for example, plaintiff's complaint to management mirrored the position taken in this lawsuit that Redmond was treated more favorably than similarly situated males or racial minorities, such a complaint would arguably fall within the opposition clause. If, on the other hand, plaintiff only made general complaints about the failure to terminate Redmond, sprinkled with vague charges of racism, the quoted language in <u>Booker</u> would apply. The Court has examined the excerpts from the plaintiff's deposition, as well as the affidavit and memorandum he submitted in opposition to the summary judgment motion, to discern

the precise nature of his complaint to management. Plaintiff contends he repeatedly stated "to different people," Banks Dep. at 281; see also id. at 282 ("I told the management team . . . . My managers and supervisors, John, Mark, David Sparks. I told them all that."), that "the reason nothing is being done is because she's—you know, it's about race. It's about color. I didn't use the—I used the word color. This is a color issue," id. at 282. These general complaints do not constitute opposition activity.[12]

Moreover, for the reasons previously stated with respect to plaintiff's disparate treatment claim, see supra pp. 7-9, the various actions about which the plaintiff complains do not constitute adverse employment actions as a matter of law. For all the foregoing reasons, plaintiff has not stated a prima facie retaliation claim.

Even assuming that plaintiff can establish a prima facie case of racial discrimination or retaliation, defendant contends that plaintiff has no evidence of pretext. Once a defendant articulates a legitimate, nondiscriminatory reason for its action, the burden shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that that explanation is pretextual and that the challenged actions were actually motivated by his race

---

[12]    It is also unclear precisely when plaintiff made his complaints. It is likely that his complaints did not commence immediately, as he apparently waited to see what the company's response to the incident would be. The warning letter, which was dated September 30, 2003, was sent barely two weeks after the incident with Redmond. The plaintiff's complaints were apparently made during the month of October. Banks Dep. at 283; see also id. at 196. This sequence of events renders it unlikely that the September 30, 2003 warning letter was sent in retaliation for plaintiff's complaint about the company's handling of the September 15, 2003 incident with Redmond.

or sex. <u>Raytheon Corp. v. Hernandez</u>, 540 U.S. 44, 53 (2003); <u>Hicks v. St. Mary's Honor Center</u>, 509 U.S. 502, 507-08 (1993). An explanation is pretextual if it "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." <u>Dews v. A.B. Dick Co.</u>, 231 F.3d 1016, 1021 (6th Cir. 2000); <u>see also Kocsis v. Multi-Care Mgmt., Inc.</u>, 97 F.3d 876, 883 (6th Cir. 1996). A jury may be entitled to infer discrimination from a plaintiff's prima facie case and evidence of pretext. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."); <u>St. Mary's Honor Center</u>, 509 U.S. at 511 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

In this case, plaintiff has admitted UPS assigns trucks to mechanics based on its business judgment, Banks Dep. at 209, 210-11; <u>see also id.</u> at 35, that the trucks in his fleet remained constant over a period of years, <u>id.</u> at 39, 211, and that UPS management told him that Redmond's truck would not be reassigned because they were afraid of creating a precedent, <u>id.</u> at 211-13,

222-23. Plaintiff testified that he had never heard of a truck being reassigned for any reason.[13] Id. at 212. Plaintiff also admits that the truck was not reassigned even though Redmond would have preferred that that happen. Id. at 215.[14]

Although the subject receives little attention in the briefs filed by both parties, it also appears that plaintiff cannot establish that the sending of the warning letter was pretextual. The plaintiff admitted that he was absent from work on three consecutive days he was scheduled to work, Banks Dep. at 50-51, 81-82, although he says his wife called his supervisor to say that he was in jail, id. at 52, 80-81. The plaintiff believed the letter "was kind of excessive," id. at 50, and he stated that "[w]hen you're being told what's going on, how can it be job abandonment?," id. at 53. However, he admits that he had no leave remaining when he missed those days. Id. at 51.

At most, the plaintiff's proof with respect to pretext has raised questions about the soundness of UPS's business decisions. However, "[t]he law does not require employers to make

---

[13]   Thus, although plaintiff asserts, in conclusory terms, that "White employees get immediate relief when they complain about hostility from Black employees," Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed Feb. 8, 2005 ("P. Br."), at 11, plaintiff has not come forward with a relevant example to support this assertion. See supra p. 10 n.10.

[14]   UPS also argues that the decision not to discipline Redmond is explained by the fact that there were "conflicting stories about whether the alleged assault occurred." Memorandum of Law in Support of Motion for Summary Judgment of United Parcel Service, Inc., filed Jan. 18, 2005 ("D. Br."), at 11. However, these assertions are not supported by any evidence. For purposes of this motion, UPS has come forward with no explanation for its failure to discipline Redmond. As UPS will not bear the burden of proof at trial, it has no obligation to provide an explanation at this time. The Court must, therefore, consider whether the failure to discipline Redmond, along or in conjunction with other facts, constitutes a violation of Title VII.

perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons." Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996). The plaintiff has come forward with no evidence that the explanations provided by the defendant for its various actions are not its real reasons and that the employer was, in fact, discriminating against the plaintiff on the basis of his race and sex.

For all the foregoing reasons, the Court GRANTS defendant's motion for summary judgment on plaintiff's claims of disparate treatment and retaliation.

It is possible that plaintiff is contending that he was subjected to a hostile work environment.[15] The harassment allegedly

---

[15]    UPS suggests, as a preliminary matter, that the Court lacks subject-matter jurisdiction to consider a hostile work environment claim because it was not exhausted. "In order for federal courts to have subject matter jurisdiction of [employment discrimination] claims, the claimant must first unsuccessfully pursue administrative relief." Ang v. Proctor & Gamble Co., 932 F.2d 540, 545 (6th Cir. 1991). Moreover, any complaint filed by the plaintiff must be "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." EEOC v. Bailey Co., 563 F.2d 439, 446 (6th Cir. 1977) (internal citations omitted). In dealing with pro se litigants, courts have tended to be more lenient in their assessment of what is contained in the charge and its relationship to the content of the complaint. As the Sixth Circuit explained:

> One reason for the expanded rule is that charges are frequently filed by lay complainants, and the courts recognize that subsequent actions should not be restricted by the failure of a complainant to attach the correct legal conclusion to the EEOC claim, conform to procedural technicalities, or include "the exact wording which might be required in a judicial pleading."

Davis v. Sodexho, Cumberland College Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998) (citation omitted); see also Ang, 932 F.2d at 546 (declining to broadly construe a Title VII charge because the plaintiff "was assisted by counsel throughout the administrative investigation. Liberal construction is not necessary where the claimant is aided by counsel in preparing his charge."). Thus, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit
(continued...)

consisted of (i) the September 13, 2003 incident between plaintiff and Redmond; (ii) UPS's failure to take action against Redmond for allegedly circulating a petition stating that Banks is an incompetent mechanic; (iii) UPS's failure to seek a temporary restraining order or injunction on Banks's behalf against Redmond; and (iv) Redmond's conduct, following the September 15, 2003 incident, of hanging around the plaintiff's work area, staring at him, and "stalking" him. See Compl., ¶¶ 12, 35-42, 54-57; Banks Dep. at 172-73, 178, 201-06, 208-09, 215, 242-43.

The elements of a Title VII hostile work environment claim are as follows:

> (1) that [the plaintiff] belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment and (5) defendant knew or should have known about the harassment and failed to take action.

Moore v. Kuka Welding Sys., 171 F.3d 1073, 1078-79 (6th Cir. 1999).

UPS first contends that the plaintiff cannot come forward with sufficient evidence to create a factual issue with respect to whether he was subjected to severe and pervasive harassment. As the Sixth Circuit noted, "[a]ctionable harassment exists if 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter

---

[15]   (...continued)
on that claim. Davis, 157 F.3d at 463.

In this case, the plaintiff's EEOC charge, which is attached to the complaint, recites the pertinent facts, and the boxes for discrimination based on race, sex, and retaliation are checked. There is no box marked "hostile work environment." The facts set forth in the EEOC charge are sufficient to alert the agency to a hostile work environment theory. This aspect of UPS's motion is without merit.

the conditions of the victim's employment and create an abusive working environment.'" <u>Farmer v. Cleveland Public Power</u>, 295 F.3d 593, 604 (6th Cir. 2002) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)); <u>Williams v. General Motors Corp.</u>, 187 F.3d 553, 560 (6th Cir. 2001). The standard for whether an employee has been subjected to a hostile work environment has both an objective and a subjective component. <u>Newman v. Federal Express Corp.</u>, 266 F.3d 401, 405 (6th Cir. 2001). There is no Title VII violation if the conduct at issue "is not severe or pervasive enough to create an objectively hostile work environment—an environment that a reasonable person would find hostile or abusive." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).[16]

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance.

<u>Id.</u> at 23; <u>see also</u> <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 81-82 (1998) (recognizing the necessity of applying [c]ommon sense" and "an appropriate sensitivity to social context").

The conduct described by plaintiff is not close to the severe and pervasive conduct held sufficient to constitute a hostile work environment. <u>See, e.g.</u>, <u>Hafford v. Seidner</u>, 183 F.3d 506, 508-11, 513 (6th Cir. 1999); <u>Moore</u>, 171 F.3d at 1079; <u>Allen v.</u>

---

[16] "Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." <u>Id.</u> at 21-22.

18

<u>Michigan Dep't of Corrections</u>, 165 F.3d 405, 410-11 (6th Cir. 1999). The only incident that can remotely be described as harassment is the single, relatively brief, physical altercation between the plaintiff and Redmond on September 15, 2003.[17] The fact that UPS did not obtain a restraining order on Banks's behalf is nothing more than a reiteration that plaintiff is dissatisfied with the company's response to the incident. Although plaintiff may have a reasonable basis for being disappointed about the apparent lack of any response by UPS, that inaction does not constitute intimidation, ridicule, and insult.

Plaintiff also cites Redmond's continued "stalking" of him in October 2003, which apparently consisted of hanging around in the garage where the mechanics work and "staring" at him. Banks Dep. at 178, 201. According to plaintiff, Redmond would come into the shop "[l]ike three times a week," <u>id.</u> at 204, for thirty minutes or longer, <u>id.</u> at 204-05, talking to other employees, <u>id.</u> at 205. During these incidents, Redmond never spoke to plaintiff. <u>Id.</u> at 178. The area in which the mechanics worked was "a pretty big shop" that could house "probably five tractors and two 18-

---

[17]   Although plaintiff also contends that the company did not take action after Redmond allegedly circulated a petition stating that he is an incompetent mechanic, plaintiff has no admissible evidence that any such petition was circulated. Plaintiff did not see the petition, Banks Dep. at 242-43, but he contends three people told him about it, <u>id.</u> at 242. Plaintiff contends that "I didn't get a chance to see it because I heard she got rid of it." None of the individuals who supposedly saw the petition has submitted an affidavit, and the plaintiff cannot rely on hearsay to defeat a summary judgment motion. <u>See</u> <u>supra</u> p. 3 n.2; <u>see also</u> <u>Cox v. Kentucky Dep't of Transp.</u>, 53 F.3d 146, 149 (6th Cir. 1995) ("Essentially, a motion for summary judgment is a means by which to 'challenge the opposing party to "put up or shut up" on a critical issue.'"). Plaintiff also has not filed a Rule 56(f) affidavit seeking an extension of time in order to obtain additional factual affidavits.

wheelers." Id. at 204. Plaintiff admitted that other drivers came into the shop to use the restroom. Id. at 202, 203-04.

Taken as a whole, plaintiff has failed to raise a triable issue of fact with respect to whether he was subjected to severe and pervasive harassment. See, e.g., Burnett v. Tyco Corp., 203 F.3d 980, 984 (6th Cir. 1999) ("[U]nder the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment.").

Moreover, plaintiff also cannot raise a triable issue of fact as to whether the alleged harassment was motivated by his race or gender. "[A]s the elements of a prima facie case indicate, a racial or sexual hostile work environment is cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's race or gender." Farmer, 295 F.3d at 605. As the Supreme Court observed in the context of a sexual harassment case:

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat[ion] . . . because of . . . sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's test indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris, [517 U.S. at 25] (GINSBURG, J., concurring).
>
> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct

typically involves explicit or implicit proposals of
sexual activity; it is reasonable to assume those
proposals would not have been made to someone of the same
sex.  The same chain of inference would be available to
a plaintiff alleging same-sex harassment, if there were
credible evidence that the harasser was homosexual.  But
harassing conduct need not be motivated by sexual desire
to support an inference of discrimination on the basis of
sex.  A trier of fact might reasonably find such
discrimination, for example, if a female victim is
harassed in such sex-specific and derogatory terms by
another woman as to make it clear that the harasser is
motivated by general hostility to the presence of women
in the workplace.  A same-sex harassment plaintiff may
also, of course, offer direct comparative evidence about
how the alleged harasser treated members of both sexes in
a mixed-sex workplace.  Whatever evidentiary route the
plaintiff chooses to follow, he or she must always prove
that the conduct at issue was not merely tinged with
offensive sexual connotations, but actually constituted
"<u>discrimina[tion]</u> . . . because of . . . sex."

<u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80 (1998)

(emphasis and alterations in original); <u>see also</u> <u>Crawford v. Medina</u>

<u>General Hosp.</u>, 96 F.3d 830, 836 (6th Cir. 1996).

At the time of his deposition, plaintiff did not believe

that the September 15, 2003 encounter with Redmond was motivated by

his race or gender:

    A.  . . . I'm saying this came out because she was
mad because she felt like it wasn't fixed right, and I
think she lost her temper.

    Q.  So you believe that Ms. Redmond genuinely
believed the truck had not been properly fixed?

    A.  Yes, I think she honestly believed that.

    Q.  And you think she just lost her temper?

    A.  Yeah.

    Q.  You don't think she singled you out for any ill
treatment because you're a man, do you?

    A.  Well, I don't really know how she feels.

21

Banks Dep. at 213–14; see also id. at 286 ("[S]he don't get along with anybody, Suzanne doesn't. She's kind of like a loner. Now, that's hearsay. I can only go by the—I'm not saying it's true. That's just what I hear.").

In response to the summary judgment motion, plaintiff submitted an affidavit in which he speculated that Redmond's actions were motivated by racial animosity. Affidavit of Robert Banks, sworn to on Feb. 7, 2005, at ¶¶ 5 ("It always appeared that Ms. Redmond stayed away from the Black mechanics and would not let them work on her truck."), 6 ("Also if a Black mechanic worked on her truck she would then take her truck to a white mechanic to make the Black mechanic did everything correct."). These allegations, which apparently were not made during the plaintiff's deposition and which do not appear in his complaint, are contrary to the plaintiff's stated position that, pursuant to company policy, Redmond's truck was assigned to his fleet and no other mechanic could work on it. See supra pp. 4–5, 14–15; see also Affidavit of Harvey Jones, sworn to on Jan. 21, 2005, at ¶¶ 13 ("Ms. Redmond's truck was specifically assigned to Mr. Banks even though other mechanics in the shop could have worked on her truck to include myself."), 14 ("When Mr. Banks would be off from work, no one else be allowed to work on Ms. Redmond's truck.").

In contrast to his present position that Redmond had expressed hostility to him and other black employees prior to the incident in question, plaintiff testified at his deposition that he had little personal contact with Redmond prior to September 15,

2003. Banks Dep. at 41 ("I have seen her for over—like seven years. We never spoke to each other, you know. She never spoke to me, and I—pretty much she always looked the other way."), 214-15, 285 ("I don't know anything about her.").[18]

Plaintiff also asserts that he had complained to a supervisor about Redmond's behavior prior to September 15, 2003. Banks Aff., ¶ 10. Again, however, he did not mention that incident in his deposition, where he testified as follows:

> Q.   Other than this incident on September 15, 2003, you have been happy with your employment with UPS?
>
> A.   Oh, yes, sir.
>
> Q.   You don't have any other complaints?
>
> A.   No, sir.

Banks Dep. at 106; see also Compl., ¶ 12 (alleging that the discriminatory employment practices began on September 15, 2003).[19]

---

[18]     In addition, plaintiff submitted an affidavit from a coworker that stated that "[p]rior to this event the rumor was that Ms. Redmond was racist and she did not like Blacks." Jones Aff., ¶ 15. However, Jones's opinion of Redmond's subjective motivations, the various opinions of the plaintiff's former coworkers concerning the existence of racial discrimination at UPS, their own purported experiences of discrimination, and the extent to which the plaintiff was treated fairly are not admissible pursuant to Fed. R. Civ. P. 56(e). Letner v. Wal-Mart Discount Dep't Store, No. 97-5473, 1999 WL 68766, at *4 (6th Cir. Jan. 15, 1999); Greene v. St. Elizabeth Hosp. Med. Center, No. 96-4308, 1998 WL 13410, at *4 (6th Cir. Jan. 7, 1998) ("A co-worker's perception that St. Elizabeth had a policy of terminating older employees cannot form the basis for the type of 'fact' affidavit that will suffice to defeat a summary judgment motion under Fed. R. Civ. P. 56(e)."); Mitchell v. Toledo Hosp., 964 F.2d at 584-85 ("Even if the Court were to consider the Affidavit [submitted by the plaintiff], the statements contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").

[19]     Although the defendant has also briefed theories of retaliatory harassment and supervisory harassment, nothing in the complaint indicates that the plaintiff is raising those claims, and the plaintiff's response to the summary judgment motion does not address them.

For all the foregoing reasons, the Court GRANTS defendant UPS's motion for summary judgment dismissing plaintiff's claims pursuant to Title VII and 42 U.S.C. § 1981.

Because all the plaintiff's federal claims have been dismissed, this Court has discretion to decline to exercise supplemental jurisdiction over the state-law claims, 28 U.S.C. § 1367(c)(3), including the claims brought by defendant Redmond. The precise scope of plaintiff's state-law claims is not clearly articulated in the complaint, which was drafted by counsel. <u>See</u> Fed. R. Civ. P. 10(b) ("Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth."). Because no compelling reason exists for this Court's continuing jurisdiction over these claims, which are properly heard in state court, the Court DISMISSES each and every one of the plaintiff's state-law claims without prejudice.

The Court must also consider whether plaintiff should be allowed to appeal this decision <u>in forma pauperis</u>, should he seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal <u>in forma pauperis</u> must obtain pauper status under Fed. R. App. P. 24(a). <u>See Callahan v. Schneider</u>, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that if a party seeks pauper status on appeal, he must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would

not be taken in good faith, or otherwise denies leave to appeal <u>in</u> <u>forma</u> <u>pauperis</u>, the prisoner must file his motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> in the Court of Appeals.  Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. <u>Coppedge v.</u> <u>United States</u>, 369 U.S. 438, 445 (1962). The same considerations that lead the Court to grant summary judgment for defendant UPS on the federal claims also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, Fed. R. App. P. 24(a), that any appeal in this matter by plaintiff is not taken in good faith. Leave to proceed on appeal <u>in</u> <u>forma</u> <u>pauperis</u> is, therefore, DENIED. Accordingly, if plaintiff files a notice of appeal, he must also pay the full $255 appellate filing fee or file a motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this ___30___ day of September, 2005.


JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 78 in
case 2:03-CV-02980 was distributed by fax, mail, or direct printing on
October 3, 2005 to the parties listed.

---

James W.J. Farra
WALLER LANSDEN DORTCH & DAVIS
Nashville City Center
511 Union St.
Ste 2700
Nashville, TN 37219

C. Timothy Crocker
CROCKER LAW FIRM
1026 College St.
Ste. 202 Bancorp South Bldg.
Milan, TN 38358

Stanley E. Graham
WALLER LANSDEN DORTCH & DAVIS
511 Union St.
Ste. 2700
Nashville, TN 37219--896

Michael G. Floyd
FLOYD LAW FIRM
2129 Winchester Rd.
Memphis, TN 38116

Honorable Jon McCalla
US DISTRICT COURT